*The Administration of the Goods of* ELIJAH D. WIL-
LIAMS.

THE policy of our law does not favor administration by strangers. But
a widow having consented to join a stranger with her in the admin-
istration, cannot revoke the consent.

C. E. WHITEHEAD, *for the Petitioner.*
H. W. ROBINSON, *for the Administrator.*

THE SURROGATE. Mary G. Williams, widow of the
intestate, applied for letters of administration, and con-
sented, in writing, to be joined with John Owen, a
stranger to the estate, not otherwise entitled to admin-
istration. Letters were accordingly issued to them jointly,
as administrator and administratrix, on the 7th day of
June, 1864. Their bond was a joint bond, in the usual
form, with two sufficient sureties.

On the 3d day of November, 1864, both the sureties
on the bond applied to the Surrogate to be released from
responsibility on account of the future acts or defaults of
Mrs. Williams, as administratrix. A citation was issued
to her, and she failing to give new sureties, the letters of
administration were revoked by the Surrogate, as to her,
on the 26th of November, leaving Mr. Owen the sole
administrator.

On the 3d December, 1864, Mrs. Williams again peti-
tioned for letters of administration on the goods and
chattels of the intestate, in her right as a widow, reciting
these facts in her petition, and alleging that she is now
able to furnish security according to law, and to the satis-
faction of the Surrogate.

The only question I feel called upon to decide in this
case is, whether the widow, having thus lost the right of
administration, and it having passed to a stranger by
operation of law, has now the power to reclaim the right
and revoke her consent.

I have nothing to do with the hardship of the case. It is true the policy of the law does not favor the entrusting of administration and the settlement of estates to strangers. But it is also true that in all cases where the widow and next of kin have lost the right which the law first confers on them, the law does give it to strangers.

The consent once given by the widow cannot be revocable. Upon that consent and the consequent issue of joint letters of administration, the administrator stood upon an equal footing with herself in all that related to the estate. She made him her equal, and gave him the same right she had herself.

In the case where a relative or creditor, not first entitled to letters of administration on the goods of an intestate, applies for such letters, the Surrogate is required to cite those having the prior right, who may not have renounced it. If no renunciation be filed, and no cause shown to the contrary by those cited, letters issue to the applicant or to the party next entitled; and it cannot be claimed that such letters may be revoked upon the subsequent appearance of the persons cited, with satisfactory security.

The power of the Surrogate to revoke letters issued under fraud, misrepresentation or mistake of existing facts, is beyond question. But there appears to be none such in this case. It seems that the widow could not obtain the sureties on her first application to the Surrogate, without consenting to associate Mr. Owen with herself in the administration. Whether Mr. Owen (as she alleges, but he denies,) has now induced them to withdraw as her sureties or not, does not affect the mere question of his or her right. Admitting that he has done so, his conduct could not, as claimed by the widow, create such a state of facts as would justify the revoking of his letters on the ground of fraud, false representation, or mistake of facts.

There is no remedy for the widow on this application, and the petition must be denied.